**DELAWARE AND HUDSON RAILWAY COMPANY, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**No. 81–CV–1246.**

United States District Court,
N.D. New York.

March 22, 1983.

George H. Kleinberger, Albany, N.Y., for plaintiff; William P. Quinn, Eric M. Hocky, Fell, Spalding, Goff & Rubin, Philadelphia, Pa., of counsel.

Richard A. Mehley, Philadelphia, Pa., for defendant; Earl H. Gallup, Jr., McNamee, Lochner, Titus & Williams, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

In a Memorandum-Decision and Order dated December 11, 1981, this Court denied plaintiff's application for a preliminary injunction to direct the defendant, Consolidated Rail Corporation, to concur in a contracted joint rate applicable to the interline transportation of freight, specifically newsprint, over the rail lines of Canadian National Railways, Conrail and the plaintiff, Delaware and Hudson Railway Company. Injunctive relief specifically was denied, since the Court held that the ICC has "primary jurisdiction" over the issue of whether the rate-fixing agreement conflicts with the market force-free enterprise policy set by the Staggers Act. *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 533 F.Supp. 692 (N.D.N.Y.1981). Before this Court is defendant's motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), predicated on the December 11, 1981 Memorandum-Decision and Order.

### II

D & H argues that the doctrine of primary jurisdiction does not apply, since the agreement here is clear and the complaint is based on common law contract principles. Therefore, D & H contends, there is no reason to refer questions to the ICC, and, moreover, the ICC does not possess jurisdiction to abrogate agreements such as this one under the Staggers Act. D & H misses the point.

The doctrine of primary jurisdiction "is concerned with promoting the prop-

er relationship between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Even when "common-law rights and remedies survive and the agency in question lacks the power to confer immunity from common-law liability, it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure 'uniformity and consistency in the regulation of business entrusted to a particular agency.'" *Nader v. Allegheny Airlines,* 426 U.S. 290, 303–304, 96 S.Ct. 1978, 1986–1987, 48 L.Ed.2d 643 (1976), quoting *Far East Conference v. United States,* 342 U.S. 570 at 574–575, 72 S.Ct. 492 at 494, 96 L.Ed. 576.

The doctrine has been applied, for example, "when an action otherwise within the jurisdiction of the court raises a question of the validity of a rate or practice included in a tariff filed with an agency . . . ." *Id.* 426 U.S. at 304, 96 S.Ct. at 1987, citing *Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 417–418, 79 S.Ct. 1210, 1214–1215, 3 L.Ed.2d 1334 (1959) and *Danna v. Air France,* 463 F.2d 407 (2d Cir. 1972). Similarly, the Supreme Court has

held that the authority to determine when and whether any particular rate should be implemented is a matter which was placed squarely in the hands of the ICC. *Consolidated Rail Corp. v. National Association of Recycling Industries, Inc.,* 449 U.S. 609, 101 S.Ct. 775, 66 L.Ed.2d 776 (1981).[1]

■ Here, while this Court may have jurisdiction over the common law contract claim, the relief sought by the complaint nevertheless involves, and seems to contravene, certain provisions of the Interstate Commerce Act, and certain ICC regulations and policies that deal with rates and rate relationships between carriers, all matters that require ICC consideration and determination. *See Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., supra,* 533 F.Supp. at 695–97 and notes 15 and 16.

■ In other words, the agreement does not involve a simple commercial transaction between two carriers. On the contrary, it requires ICC's consideration of the following issues raised by the complaint:

(1) Whether the rate fixing agreement between the carriers conflicts with the market force-free enterprise policy set by the Staggers Act;[2]

(2) Whether Conrail's failure to concur in the reduced rate via the D & H's route

---

**1.** Recently, in reaffirming *Consolidated Rail, supra,* and several other decisions based on the primary jurisdiction issue, the Court concluded that the lower federal court had erred in ordering the carrier to take certain rate actions:

[The] Court of Appeals did that which we have said a federal court may not do: *i.e.,* freeze the rate that railroads charge shippers prior to a decision by the Commission as to what a reasonable rate should be. That approach undermines the Commission's ability to exercise the primary jurisdiction delegated to it by Congress to insure equitable and uniform rates.

*Burlington Northern, Inc. v. United States,* —— U.S. —— at ——, 103 S.Ct. 514 at 521, 74 L.Ed.2d 311 (1982).

**2.** This Court notes that the agreement provides that if Congress "enacts legislation that imposes any obligation on Conrail or Railroad [D & H] that is imposed under this agreement, then such legislation shall supersede this agreement with respect to such obligation while such legislation is in effect." (Agreement, ¶ 9.) It is in the ICC's bailiwick to determine whether the policy of the Staggers Act conflicts with the

rate fixing agreement. A declaration by the ICC to this effect does not require the ICC to exercise the common-law power of a federal court to rescind a contract.

Moreover, even without this contractual provision respecting superseding legislation, the Supreme Court has held that where a subsequently enacted statutory provision affecting carriers conflicts with a private agreement between a carrier and another party, the statute takes precedence and supersedes the conflicting provisions of the private agreement. *See, e.g., State of New York v. United States,* 257 U.S. 591, 601, 42 S.Ct. 239, 240, 66 L.Ed. 385 (1922); *Louisville & Nashville Railroad Co. v. Mottley,* 219 U.S. 467, 479–480, 31 S.Ct. 265, 269, 55 L.Ed. 297 (1911); *Armour Packing Co. v. United States,* 209 U.S. 56, 80–82, 28 S.Ct. 428, 435, 52 L.Ed. 681 (1908). Thus, although the ICC may lack jurisdiction and power to abrogate an agreement, the ICC may still entertain questions concerning the existence and interpretation of legislative policy and whether an agreement conflicts with that policy. *See Board of Trade v. United States,* 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432 (1911).

constituted a "commercial closing" under ICC decisions;

(3) Whether the commercial closing doctrine and an agreement providing for rate equalization over competing routes are consistent with present ICC policy and decisional law, particularly in light of recent amendments to the Interstate Commerce Act and ICC policy implementing those provisions;

(4) Whether the agreement conflicts with 49 U.S.C. § 10705(a), which allows a carrier to apply a surcharge increasing or decreasing the through charge without the concurrence of other parties to the joint rate;

(5) Whether Conrail should have applied initially to the Commission to cancel joint rates on through routes under 49 U.S.C. § 10705a(c); and

(6) Whether the agreement and §§ 10705 and 10762 conflict. *See Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* supra, 533 F.Supp. at 696–697. These issues must be resolved before this Court can grant plaintiff any relief.

### III

Accordingly, the instant proceeding is stayed pending resolution of the aforementioned questions and issues by the ICC, *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *United States v. United States Steel Corp.,* 645 F.2d 1285 (8th Cir.1981), via either a complaint proceeding or appropriate petition invoking Commission jurisdiction. Defendant's motion is denied.

It is so Ordered.

---

The several arguments and decisions relied upon by D & H do not alter the foregoing conclusion. Citing *Consolidated Rail Corporation-Petition to Require Cancellation of Agreements with Grand Trunk Railway Co. and Detroit, Toledo and Ironton Railroad Co.,* Finance Docket No. 29695, D & H argues that the various issues at bar cannot be referred to the ICC because the ICC has indicated that it does not have jurisdiction to abrogate contracts such as the one involved in this case. As stated, the principal issue here does not involve abrogation or rescission of the contract. Rather, the principal issue is whether the provisions of the agreement invoked here to require certain Conrail rate action so conflict with present statutory and regulatory policy as to make the agreement unenforceable. The Commission decision in Finance Docket No. 29695 stands only for the proposition that the ICC has no specific power to abrogate agreements; the decision does not reach the question of the ICC's power to *interpret* contracts and the extent to which the terms of the contract are *subject to* the Interstate Commerce Act.

Although D & H also cites *Cleveland-Cliffs Iron Co. v. ICC,* 664 F.2d 568 (6th Cir.1981), for the proposition that the ICC does not have any expertise in the interpretation of contracts, this Court believes that *Cleveland-Cliffs Iron* is inapposite to the facts here. First, that proceeding involved the reasonableness of certain railroad rates and several rate agreements *between a carrier and a shipper.* Second, the court observed that the Staggers Act specifically precluded ICC jurisdiction over contract rates involving a carrier *and a shipper* under 49 U.S.C. § 10713, although it upheld ICC jurisdiction over the rate in that case because the matter was on appeal at the time the Staggers Act became law. Clearly, *Cleveland-Cliffs Iron* is inapplicable to the issues at bar.

D & H cites the recent district court decision of *Detroit, Toledo and Ironton Railroad Co. and Grand Trunk Western Railroad Co. v. Consolidated Rail Corporation,* No. 82–74087 (E.D. Mich. November 17, 1982), app. pending in No. 82–3215, *Detroit, Toledo and Ironton Railroad Co. v. United States* (6th Cir.), to support its contention that the agreement is valid under the recent statutory enactments and should be enforced. That decision, while involving a somewhat different factual situation from that involved here, nevertheless, is clearly contrary to existing law.

First, that decision fails to recognize that railroads are highly regulated industries under the Interstate Commerce Act and that Congress, in enacting the Staggers Act, dictated different rules by which rail carriers were to operate, principally in the area of competitive ratemaking. Moreover, it totally ignores strong precedent declaring that the ICC, not the courts, has primary jurisdiction over rates and tariffs, *see, e.g., Consolidated Rail Corp.,* supra. Second, the decision erroneously states that the ICC in Finance Docket No. 29695 "decided that the present contracts are enforceable." Slip op. at 3. The ICC made no such decision. All it did was refuse to "abrogate" the agreement.

Finally, examination of that decision clearly reveals that no consideration was given to the provisions of the Interstate Commerce Act. The decision appears to have been made solely on the basis of contract law and without any consideration of the federal statute regulating rail carriers.