In the Matter of BOWLEY ASSOCIATES, LTD., et al., Respondents, v STATE OF NEW YORK INSURANCE DEPARTMENT et al., Appellants, and AUTOMOBILE INSURANCE PLAN, Intervenor-Appellant.

First Department, January 24, 1984

**APPEARANCES OF COUNSEL**

*Martin J. Hertz* of counsel (*Marion S. Hertz* and *Steven M. Berlin* with him on the brief; *Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* attorneys), for intervenor-appellant.

*Robert S. Hammer* of counsel (*Melvyn R. Leventhal* and *Richard G. Liskov* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants.

*Laurence London* of counsel (*Richard L. Herzfeld* with him on the brief; *Kimmelman, Sexter & Sobel,* attorneys), for respondents.

### OPINION OF THE COURT

Asch, J.

Petitioners Bowley Associates, Ltd. (BAL), and John F. Bowley are duly licensed insurance brokers who have placed automobile insurance for many years through the New York Automobile Insurance Plan (NYAIP). That insurance is placed by submission of a completed NYAIP application along with the requisite deposit premium.

The NYAIP is an entity formed pursuant to section 63 of the Insurance Law. That law provides, in part, that the Superintendent of Insurance shall approve a plan by which applicants for insurance who are unable to obtain insurance in the voluntary market are assigned to insurers in accordance with the voluntary automobile insurance written by each such insurance company. The plan rules are approved by the superintendent and are administered by the NYAIP through a governing committee. All insurers licensed to write motor vehicle liability insurance in this State are statutorily required to be subscribers to the NYAIP. Section 63 of the Insurance Law provides, *inter alia:*

"1. The superintendent shall, after consultation with the insurers licensed to write motor vehicle insurance in this state, approve a reasonable plan or plans for the equitable apportionment among such insurers of applicants for such insurance who are in good faith entitled to but are unable to procure insurance through ordinary methods and, when such plan has been approved, all such insurers shall subscribe thereto and shall participate therein. In addition to the members of the committee elected by the subscribers to administer the plan, the superintendent shall appoint annually two additional members who shall be duly licensed insurance agents or brokers representative of broad segments of the public obtaining insurance through the plan. Amendments to the plan may be made by the committee designated to administer the plan, subject to the approval of the superintendent, or shall be made at the direction of the superintendent * * *

"4. It shall be the duty of the committee designated to operate the plan to establish for the benefit of applicants standards of service to be observed by insurers participating in the plan including, but not limited to, the timely issuance of policies, certificates and endorsements, financial security forms, and the collection of required deposits.

"5. Any applicant for such insurance, any person insured under such plan and any insurer affected may appeal to the superintendent from any ruling or decision of the manager or committee designated to operate such plan. All orders of the superintendent shall be subject to judicial review as provided in section thirty-four of this chapter."

The upper right-hand corner of the application (which is the form prepared by NYAIP and approved by the Insurance Department) contains a "statement of the producer of record" wherein it is specified that if: "the policy is cancelled or a change is made resulting in a return premium to the insured, I [the broker or producer of record] agree to return the *unearned commission* portion of such return premium." (Emphasis supplied.)

BAL, as a producer under the plan, from time to time would receive demands from various insurers to return that portion of its commissions which such insurers deemed attributable to the unexpired terms of canceled policies. Ultimately, BAL and Bowley consulted with counsel and concluded that, under the language of the law, commissions could be considered to have been *earned* upon submission of the application and issuance of the pertinent insurance policy. Hence, BAL and Bowley decided that if there were subsequent policy cancellations, there would be no "unearned" commissions to return. Thereafter, claims by insurers for pro rata portions of commissions purportedly attributable to the unexpired portion of canceled policies were rejected by BAL. The Insurance Department was so informed.

By citation dated July 14, 1981, the superintendent and the department charged BAL and Bowley with "incompetency and/or untrustworthiness to act as an insurance broker" by reason of their failure to return the alleged "unearned" commissions. That citation was instituted pur-

suant to section 119 of the Insurance Law which provides, in pertinent part:

"9. The superintendent may refuse to renew, revoke or suspend any insurance broker's license if, after notice and a hearing, he determines that the licensee, or any sublicensee named in such license * * *

"(d) has demonstrated his or its incompetency or untrustworthiness to act as insurance broker."

Under section 14D of the rules of the NYAIP plan, approved by the superintendent pursuant to subdivision 1 of section 63 of the Insurance Law, it is provided: "In the event the policy is cancelled or insurance thereunder terminated or a change is made resulting in a return premium to the insured, the producer of record shall return the unearned commission portion of such return premiums."

In their response to the citation, BAL and Bowley again reiterated their position that the commissions in question were earned and not unearned. BAL further disputed the authority of the Insurance Department to, in effect, litigate disputes between an insurer and a broker regarding commissions.

A hearing was conducted on the citation at the offices of the department on August 26, 1981. The hearing officer rejected the jurisdictional objection of BAL and Bowley. Evidence was received that petitioners failed to return various "unearned" commissions.

By decision dated May 11, 1982, the hearing officer found BAL's views concerning unearned commissions to be without merit. He determined that BAL and Bowley were "untrustworthy" to act as insurance brokers. He imposed alternative penalties of revocation of their licenses or payment of all outstanding "unpaid unearned commissions" plus written assurances that future "unearned" commissions would be returned, together with fines of $500 against each. Petitioners BAL and Bowley then instituted this proceeding seeking vacatur of the department's determination on the grounds of lack of jurisdiction and lack of a substantial evidence to support the determination. Special Term held the department lacked jurisdiction

to discipline the petitioners and vacated the department's determination. This holding was in error.

The NYAIP was created under a program established pursuant to section 63 of the Insurance Law. Section 14D of the plan requires that brokers return the "unearned" portion of a commission when a policy is canceled. In addition, Circular Letters No. 16 (of Oct. 19, 1976) and No. 23 (of Dec. 30, 1975) of the Insurance Department, both state, in part:

"In general a broker has earned his commission in full when the policy has been issued and the premium paid. Under these circumstances the broker is under no obligation to make any refund of a portion of his commission to the insurer*

* * *

"*Exceptions to this general rule, as set forth in the case Western National Insurance Co. v. Haph, 277 App. Div. 6, 97 N.Y.S.2d 447 (1st Dept. 1950), aff'd 302 N.Y. 678 (1951), may apply where the broker has made an agreement to refund a portion of his commission in the event of cancellation or where the policy is an audit policy, or where the broker has induced the cancellation.

"The New York Automobile Insurance Plan and the New York Property Insurance Underwriting Association furnish two examples of refund agreements. The rules of both facilities provide that, in the event of the cancellation of a policy placed through them, the producer of record shall return the unearned portion of the commissions. The application forms contain such a provision which is signed by the producer." (Emphasis added.)

Special Term was incorrect in its characterization of the petitioners' actions as not having any impact upon the public at large. Its citation of Matter of Stowell v Cuomo (52 NY2d 208) is inapposite. That case, dealing with section 441-c of the Real Property Law, involved a dispute between a real estate broker and his salesman in regard to the employee's compensation. The Court of Appeals found (p 210) that to be a "simple contractual dispute * * * having no demonstrable impact upon the public at large".

Though both section 441-c of the Real Property Law and sections 117 and 119 of the Insurance Law contain the

term "untrustworthiness", the statutes regulate different industries. The Real Property Law seeks to protect the "general public". A broker's salespersons are not members of this public and that was recognized even prior to *Matter of Stowell v Cuomo* (*supra*) (see *Matter of Schwartz Co. v Lomenzo,* 42 AD2d 23, 25, affd 34 NY2d 849, 850). In contrast, insurance brokers and agents act as intermediaries between insureds, prospective insureds and insurers. Thus, insurers would be among those entitled to the protection of the Insurance Department against a licensee's misconduct. In addition, it must be noted that failure to return unearned commissions by a broker reduces the revenues of the insurers, thereby increasing their cost of doing business and adversely affecting rates. If insurers were forced to commence individual civil actions against brokers who withheld such unearned commissions, the cost of conducting such a plethora of suits would ultimately fall on the general public in the form of increased premium rates.

It has been established that the NYAIP rules govern the rights and liabilities of parties entering into assigned risk contracts (*Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359). Thus, the duties and benefits of a broker procuring insurance for an applicant through the plan are not simply the product of an isolated contractual relationship between broker and insurer, but are prescribed by the Superintendent of Insurance, as set forth within the NYAIP rules. Not only are brokers' commissions fixed by plan section 21, but the policy period of three years is mandated by plan section 13 and the limits of coverage provided are specifically set forth in section 10. In addition, the form of application and the amount of deposit are set forth in section 11; the provisions of the policy in section 17; the form of the notice of assignment is set forth in section 14; and even the form of payment, i.e., certified or bank check, is set forth in section 14. Thus, the plan is a comprehensive regulatory scheme which supplants the rights and liabilities of parties to an ordinary insurance contract (*Aetna Cas. & Sur. Co. v O'Connor, supra*).

■ It seems clear that assigned risk insurance applications and policies cannot be viewed as private, contractual

relationships, but are special relationships subject to immediate oversight and supervision by the Superintendent of Insurance.

■ Petitioners' assertion that even if there was jurisdiction, the administrative determination was not supported by substantial evidence is without merit. Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180). An administrative determination supported by such evidence has a rational basis and will be upheld by the courts (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 230-231).

Here, petitioners conceded their failure to remit the contested commissions, contrary to the rules of the plan, their own written undertakings, and the department's circular letters. Certainly, the determination was supported by substantial evidence.

The term "untrustworthy" is a term of art employed by the statute. It is apparently used in a broader sense than that term is popularly employed. However, it seems clear that the conduct of the petitioners falls within the intended ambit of the statute. This court has previously held the failure of a broker to refund the unearned portion of a premium to his client to be "untrustworthy" conduct (see *Matter of Katzman v Lewis,* 65 AD2d 739).

In addition, the penalty imposed, namely, revocation of petitioners' licenses unless they return the unearned portions of their assigned risk commissions, gives assurance that they will comply with their written undertakings to refund such commissions and comply with the rules of the NYAIP, plus fines totaling $1,000, was not disproportionate to the offense (*Matter of Pell v Board of Educ., supra;* see, also, *Kostika v Cuomo,* 41 NY2d 673, 676).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (B. SHERMAN, J.), entered November 10, 1982, which vacated a determination of respondents-appellants dated May 11, 1982 for lack of jurisdiction, should be reversed, on the law, without costs, the application by petitioners denied and the petition dismissed.

SILVERMAN, BLOOM, FEIN and KASSAL, JJ., concur.

Order and Judgment (one paper), Supreme Court, New York County, entered on November 10, 1982, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, the application by petitioners denied and the petition dismissed.