**AZBY BROKERAGE, INC.,** d/b/a Shell-bank Brokerage of Brooklyn, Inc.; Shellbank Brokerage, Inc.; and Har-Lem Brokerage, Inc., on Behalf of themselves and all other insurance brokers similarly situated, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. 85 Civ. 3594(RJW).

United States District Court, S.D. New York.

April 2, 1986.

Weg and Myers, P.C., New York City, for plaintiffs; Frank A. Weg, Ira M. Myers, of counsel.

Cahill Gordon & Reindel, New York City, for defendant; Charles Platto, Kevin Burke, Jacqueline McCarthy, William Jacobson, Thomas McCaffrey, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an action founded upon diversity of citizenship. *See* 28 U.S.C. § 1332. Defendant moves pursuant to Rule 12(b)(1) and 12(b)(6), Fed.R.Civ.P., for an order dismissing the complaint on the grounds of primary jurisdiction, failure to exhaust state administrative or judicial remedies, and failure to state a claim on which relief can be granted. For the reasons that follow, the motion is granted in part and denied in part, and the action is stayed to permit plaintiffs to present their grievance in the first instance to the appropriate state administrative agency.

## BACKGROUND

Plaintiffs allege in the complaint that they are insurance brokers licensed to do business in New York. In this action, they purport to represent "themselves and all other insurance brokers similarly situated." Complaint at 1. Defendant, Allstate Insurance Company ("Allstate"), is an Illinois corporation with its principal place of business in that state.

The instant lawsuit arises out of the parties' participation in the New York Automobile Insurance Plan ("NYAIP" or "Plan"). The Plan, in which all insurers licensed to provide automobile insurance in New York must participate, provides for the "equitable apportionment among such insurers of applicants for [automobile] insurance who are in good faith entitled to but are unable to procure it through ordinary methods." N.Y.Ins.Law § 5301. Under the terms of the Plan, which was approved originally by the New York Superintendent of Insurance ("Superintendent") and is subject to his continuing oversight, *see id.*, a "high-risk" applicant for automobile insurance who qualifies is assigned to a participating insurer, who then must provide insurance coverage to the applicant and commissions to the responsible insurance broker or agent ("producer of record") subject to various conditions of the Plan. *See generally* Defendant's Memorandum of Law, Addendum A (copy of the Plan or NYAIP).

The Plan is administered by a governing committee ("Committee") composed of elected and appointed representatives of participating insurance companies and brokers or agents, and by a manager. *See* N.Y.Ins.Law § 5302; *see also* NYAIP § 4. The Committee is required to meet "as often as may be required to perform the general duties of administration of the Plan." NYAIP § 5. In addition, the Committee is required to meet at least twice a year with a liason committee representing the major associations of insurance agents in the state. *Id.* The Plan is subject to amendment either by the Committee or at the direction of the Superintendent. N.Y. Ins.Law § 5301(b). Applicants for insurance under the Plan, persons already insured under the Plan, and participating insurers may appeal any ruling or decision of the Committee to the Superintendent. *Id.* § 5304(a); *see also* NYAIP § 19. Furthermore, any order, regulation or decision of the Superintendent is subject to judicial review in a proceeding brought under Arti-

cle 78 of the New York Civil Practice Law. N.Y.Ins.Law § 326(a).

In the complaint, plaintiffs allege that Allstate, as a participating insurer under the Plan, is often assigned high-risk accounts for automobile insurance that were originally written by independent brokers, members of the purported plaintiff class. "Sometime after such assignments," plaintiffs contend, "Allstate has transferred the account from a plaintiff broker to one of its own affiliated brokers, many times without the consent of either the insured or the broker." Complaint at ¶ 8. By so doing, plaintiffs argue, defendant has "maliciously 'pirat[ed]' away these accounts and commissions in complete disregard of the wishes of the brokers and their insureds." *Id.* On the basis of these allegations, plaintiffs assert claims against defendant of *prima facie* tort, tortious interference with contractual relations, and deceptive acts and practices in the conduct of a business under N.Y.Gen.Bus.Law § 349(h). Plaintiffs seek $10 million in compensatory and $50,001,000 in punitive damages.

In the instant motion, defendant raises three grounds for dismissing the complaint. First, Allstate argues that plaintiffs' grievance is a matter properly within the primary jurisdiction of the New York administrative agencies charged with overseeing the assignment of high-risk auto insurance accounts in the state. Second, defendant charges that plaintiffs also have failed to exhaust their administrative and judicial remedies before the Committee of the NYAIP, the Superintendent, and the New York courts. Third, defendant contends that in any event the complaint fails to state a viable cause of action under New York law.

At oral argument on defendant's motion, the Court and the parties explored at some length the applicability of the doctrines of primary jurisdiction and exhaustion of administrative remedies to the instant case. In a subsequent submission to the Court, defendant confirmed that in the event the Court dismissed or stayed the action on the basis of primary jurisdiction or failure to exhaust administrative remedies, Allstate would raise no jurisdictional objection to plaintiffs' timely application to the NYAIP, the Superintendent or the New York courts. Affidavit of Charles Platto (sworn to Dec. 20, 1985). Because the Court concludes below that the instant action should be stayed under principles of primary jurisdiction, the Court finds it unnecessary to consider Allstate's alternative arguments concerning the viability of plaintiffs' claims under New York law.

## DISCUSSION

The judicial doctrines invoked here—primary jurisdiction and exhaustion of administrative remedies—arise from similar principles of administrative law and address some of the same concerns. Both doctrines, for example, presume the desirability of presenting certain issues or disputes in the first instance to an administrative agency that possesses specialized knowledge or experience in the relevant field. Under either doctrine, primary resort to an administrative agency equipped to address a particular question serves both to preserve the integrity of the administrative process involved and to promote consistency in the interpretation and application of the relevant regulatory scheme. At the same time, resort to available administrative procedures promotes judicial economy by avoiding needless litigation of matters that can effectively be resolved at the agency level. *Cf. United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64–65, 77 S.Ct. 161, 165–66, 1 L.Ed.2d 126 (1956) (primary jurisdiction doctrine) *with McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (exhaustion of administrative remedies); *see generally* 4 K. Davis, *Administrative Law* §§ 22:1 & 26:1 (1983 ed.).

The doctrines differ, however, in emphasis and, at times, application. As Professor Davis has explained, the primary jurisdiction doctrine was developed "to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agen-

cy may first answer some question presented." 4 K. Davis, *supra*, § 22:1 at 81. The Supreme Court, for example, has interpreted the doctrine to authorize courts "to refer specific issues to an agency for initial determination" even where the plaintiff's "common-law rights and remedies survive and the agency in question lacks the power to confer immunity from common-law liability." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 96 S.Ct. 1978, 1986, 48 L.Ed.2d 643 (1976).

■ While the primary jurisdiction doctrine stresses the resolution of particular *issues* by an agency rather than the courts, the exhaustion doctrine emphasizes available administrative *procedures* that must or should be invoked before a particular question is presented to the courts for review. Thus, "the most common application of the exhaustion doctrine is in cases where the relevant statute provides that certain administrative procedures shall be exclusive." *McKart, supra*, 395 U.S. at 193, 89 S.Ct. at 1662. Frequently, the exhaustion doctrine is applied where the question presented for judicial review concerns the legitimacy of an agency's exercise of decision-making power. *See, e.g., ITT Continental Baking Co. v. United States*, 559 F.Supp. 454 (S.D.N.Y.1983); *Bruan, Gordon & Co. v. Hellmers*, 502 F.Supp. 897, 906–08 (S.D.N.Y.1980) (on motion for reconsideration). At the same time, a court will not require that administrative remedies be exhausted where the agency action being challenged is plainly beyond the agency's jurisdiction, *Touche Ross & Co. v. Securities and Exchange Comm'n*, 609 F.2d 570, 575–76 (2d Cir.1979), or where the administrative remedies available are plainly inadequate, *T.I.M.E.–DC, Inc. v. Management-Labor Welfare & Pension Funds*, 756 F.2d 939, 945 (2d Cir.1985).

In the instant case, jurisdiction is founded upon the diverse citizenship of the parties, and therefore the Court must look for guidance to the law of New York, the forum state. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963) (*en banc*). Of particular interest to the Court in ruling on the instant motion to dismiss, then, are cases in which the New York courts have dismissed or stayed similar actions—under either of the doctrines discussed above—so that the matter could be presented first to an appropriate state agency.

The courts of New York recognize both the doctrines of primary jurisdiction and exhaustion of administrative remedies discussed above. *See, e.g., Capital Telephone Co., Inc. v. Pattersonville Telephone Co., Inc.*, 56 N.Y.2d 11, 22–23, 436 N.E.2d 461, 466, 451 N.Y.S.2d 11, 16 (1982); *Young Men's Christian Ass'n v. Rochester Pure Waters Dist.*, 37 N.Y.2d 371, 375–76, 334 N.E.2d 586, 588, 372 N.Y.S.2d 633, 636 (1975). As the Court observed at oral argument, however, defendant has cited no New York cases that directly support its primary jurisdiction or exhaustion arguments in the circumstances presented here. Allstate cites one case in which a New York court dismissed an action against an insurance company on the ground that the Superintendent had primary jurisdiction over the claims raised therein. *Fusco v. New York Prop. Underwriters Assocs.*, 70 A.D.2d 895, 417 N.Y.S.2d 310 (2d Dep't), *appeal denied*, 48 N.Y.2d 603, 421 N.Y.S.2d 1027, 396 N.E.2d 206 (1979). That case can arguably be distinguished from the instant action, however.

The insurance company that was sued in *Fusco* for breach of a high-risk fire insurance contract was itself a state-created entity. In addition, the statutory insurance plan implicated there explicitly guaranteed the plaintiff in that action, a high-risk fire insurance policyowner, the right to appeal to the Superintendent "any ruling, action or decision by ... the [defendant] association." N.Y.Ins.Law § 5406 (formerly N.Y. Ins.Law § 655(1)). "Under these circumstances," the Appellate Division held in *Fusco*, "it was entirely competent and appropriate for the Legislature to give primary jurisdiction over disputes which might arise within the operation of such a legislatively established entity to an administrative agency having peculiar ability and

experience in the field." 70 A.D.2d at 896, 417 N.Y.S.2d at 311.

In contrast, the defendant sued in this action, Allstate, is a private insurance carrier, not a state-created entity. Furthermore, the regulatory scheme involved here, the NYAIP, does not even explicitly *permit* plaintiffs in this action, high-risk auto insurance brokers, to seek review of the operation of the Plan by the Plan Committee or to appeal a ruling or decision of the Committee to the Superintendent. *See* N.Y.Ins.Law § 5304(a); NYAIP § 19 (only applicant for insurance, insured and insurer explicitly permitted to seek review of Plan Committee and to appeal decision to Superintendent). Under these circumstances, it is far from clear that a New York court would find, as did the court in *Fusco*, that the state legislature *intended* the instant dispute—between insurance brokers and a private insurance company—to be presented in the first instance to the Plan Committee or the Superintendent under the doctrine of primary jurisdiction. Furthermore, the absence of an explicit right on the part of brokers to present a grievance to the Plan Committee or to appeal a ruling of the Committee to the Superintendent undercuts defendant's alternative argument that plaintiffs have failed to exhaust their state administrative remedies. Plaintiffs cannot fairly be expected to have pursued state administrative remedies that were not in fact open to them.

A dearth of New York case law directly on point does not end the inquiry, however. Allstate correctly notes that New York courts that have considered the purpose and scope of the NYAIP have concluded that the comprehensive nature of the Plan's provisions and its requirement that all licensed auto insurers participate bespeak "a concern for the entire range of duties and obligations which comprise the assigned risk insurance contract...." *Aetna Casualty and Surety Co. v. O'Connor*, 8 N.Y.2d 359, 363, 170 N.E.2d 681, 683, 207 N.Y.S.2d 679, 681 (1960); *see also Bowley Assocs., Ltd. v. State Ins. Dep't*, 98 A.D.2d 521, 526, 471 N.Y.S.2d 585, 589 (1st Dep't), *aff'd*, 63 N.Y.2d 982, 473 N.E.2d 261, 483 N.Y.S.2d 1011 (1984). In an action brought by insurance brokers to challenge a decision of the Superintendent, the Appellate Division held that the NYAIP plainly governs "the duties and benefits of a broker procuring insurance for an applicant through the Plan...." *Bowley Assocs., supra*, 98 A.D.2d at 526, 471 N.Y.S.2d at 589.

The court in *Bowley* did not hold, however, that all disputes that might arise between brokers and other participants in the Plan must be submitted to the Plan Committee or to the Superintendent for adjudication. The Appellate Division simply held there that the Superintendent had not acted beyond his jurisdiction in penalizing the petitioner-brokers for having failed to return certain unearned commissions as required under § 14(D) of the Plan. Indeed, despite broad language in *Aetna, supra*, which could conceivably be interpreted to mean that the Plan has completely supplanted all pre-existing rights of action between Plan participants, it is apparent that at least some common law claims involving brokers, insurers and insureds survive the NYAIP. *See, e.g., Reliance Ins. Cos. v. Daly*, 38 A.D.2d 715, 329 N.Y.S.2d 504 (2d Dep't 1972) (insurer's damage action against insured for fraud not abrogated by NYAIP where action does not impinge upon third party's recovery).

▪ At oral argument, Allstate conceded that the NYAIP does not expressly abrogate the common law claims plaintiffs seek to raise in this action. Defendant maintained, however, that when viewed as a whole, the Plan's provisions do supplant the state law claims plaintiffs wish to press here. *Cf. Aetna, supra* (both comprehensive scope of Plan and several of its specific provisions implied state legislature's intent to abrogate insurer's common-law right to rescind policy on ground of fraud or misrepresentation). The Court's reading of the NYAIP does not persuade it that the Plan was intended to eliminate all common law claims an insurance broker might conceivably bring against an insurance compa-

ny participating in the Plan. *Cf. Daly, supra* (insurer's fraud claim against insured, under certain circumstances, survives NYAIP). Nor is it immediately apparent that the specific tort claims plaintiffs raise here are implicitly abrogated by the NYAIP. The particular circumstances of the instant case do persuade the Court, however, that the issues plaintiffs raise herein should be presented in the first instance to an appropriate state agency for consideration.

█ This is not a simple contract or tort suit brought by a few independent insurance brokers to recover unpaid commissions. In addition to their claims of *prima facie* tort and tortious interference with contractual relations, plaintiffs charge Allstate in the complaint with unfair business practices actionable under N.Y.Gen. Bus.Law § 349(h). Moreover, plaintiffs do not sue only on their own behalf, but on behalf of a class of similarly situated insurance brokers, and seek not only damages but permanent injunctive relief. Viewed as a whole, then, the complaint implicates far more than the contractual relationship between an individual insurance broker and particular high-risk auto insurance policyowners, or the relationship between an individual broker and a particular insurance carrier. Plaintiffs in this action seek nothing less than to alter the allegedly wrongful conduct of Allstate, concededly a major insurance carrier in New York, in its relations with brokers and high-risk auto insurance policyowners statewide. Indeed, plaintiffs concede as much in the class action allegations of the complaint. *See* Complaint at ¶ 11.

On these facts, the Court must reject plaintiffs' contention that "[the] case presents [solely] legal questions, the resolution of which does not require administrative expertise but rather a judicial determination." Plaintiffs' Memorandum in Opposition at 2–3 (quoting *Mobil Oil Corp. v. Department of Energy*, 469 F.Supp. 1119, 1123–24 (S.D.N.Y.1979)). Instead, the Court concludes that, under the primary jurisdiction principles summarized above,

the matters raised herein should properly be referred to the Committee charged with administering the Plan and, if necessary, to the Superintendent for initial consideration.

As cases applying the primary jurisdiction doctrine make clear,

[u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conf. v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952). *See also Danna v. Air France*, 463 F.2d 407, 412–13 (2d Cir.1972); *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 562 F.Supp. 175, 176–77 (N.D. N.Y.1983). New York case law already establishes that the regulatory scheme implicated here, the NYAIP, reaches many significant aspects of the relationships among brokers, insurers, and policyowners participating in the Plan. *See Bowley, supra.* In this particular case, plaintiffs' allegations of wrongdoing by Allstate in "pirating away" high-risk auto insurance accounts and corresponding commissions appear to implicate several specific provisions of the Plan. *See, e.g.,* NYAIP § 14 (provision governing insurer's notice to applicant and producer of record upon initial assignment, renewal and termination of policy); §§ 15(5) & 21 (performance standard governing insurers' payment of commissions to producers of record); § 15A (performance standards governing producers of record). Referral of plaintiffs' grievance to the NYAIP Committee and/or the Superintendent, both of whom exercise supervisory powers over the statewide operation of the Plan, should at a minimum assure "uniformity and consistency" in the application of the Plan's current rules to the conduct of Allstate and other insurers in their dealings with brokers who initially write high-

risk auto insurance accounts. Furthermore, to the extent plaintiffs' allegations bring to light conduct by participating insurance carriers that the NYAIP does not adequately address, the Committee and the Superintendent are in a far better position than is this Court—both because of their familiarity with the New York insurance industry in general and the workings of the NYAIP in particular, and by virtue of their statutory authority to revise the Plan—to fashion appropriate Plan amendments.

█ In determining that plaintiffs should be required first to present their grievances to the NYAIP Committee and, if necessary, to the Superintendent before pursuing their claims in this forum, the Court relies on principles of primary jurisdiction rather than exhaustion of administrative remedies. In contrast to the cases noted above in which the exhaustion doctrine has been invoked to stay or dismiss a judicial proceeding, this is not an action in which the relevant statutory scheme expressly mandates that certain administrative procedures be followed, nor do plaintiffs here seek to challenge any agency regulation or decision. Indeed, it is not even clear what administrative remedies plaintiffs may in fact pursue before the Plan Committee and the Superintendent, nor what relief they may reasonably expect to obtain from those state administrative bodies. See T.I.M.E.-DC, Inc., supra, 756 F.2d at 945 (exhaustion doctrine not applicable where nonjudicial remedies are inadequate). For these reasons, the Court concludes that the exhaustion doctrine is not strictly applicable to the case at bar.

█ Likewise, because it is not clear that plaintiffs can obtain complete relief on their claims by presenting a grievance to the appropriate state agency or agencies, the Court concludes that the instant action should be stayed rather than dismissed. The Court further concludes that, although the relevant state statute does not expressly require plaintiffs to exhaust their administrative remedies, both the parties and the Court will be better served if plaintiffs are required to pursue all state administrative remedies reasonably available to them before returning to this forum for judicial relief. Likewise, the Court concludes that Allstate should be afforded the opportunity to appeal any adverse determination of the Plan Committee or Superintendent by available state procedures.

## CONCLUSION

Applying principles of primary jurisdiction to the instant case, the Court concludes that the issues raised in the present action concerning Allstate's alleged statewide practice of "pirating away" high-risk auto insurance policyowners from plaintiffs and other brokers should be presented in the first instance to the NYAIP Committee, the state administrative body created to monitor the assignment of high-risk auto insurance policies to insurers participating under the Plan, and, if necessary, to the Superintendent, who bears ultimate responsibility for the operation of the Plan.

Accordingly, the within motion is granted in part, and the instant action is stayed and placed on the Court's suspense docket so that plaintiffs may present their allegations of "pirating" by Allstate in the first instance to the governing Committee of the NYAIP. Thereafter, depending on the results before the NYAIP, either party may seek review by the Superintendent and, if appropriate, by the New York courts in an Article 78 proceeding. Once they have presented their grievance to the appropriate state administrative tribunal[s], as set forth above, plaintiffs shall notify the Court either that the instant suit has been rendered moot by state administrative or judicial action, or that they have not obtained adequate relief from the responsible state administrative bodies and therefore desire to pursue their claims in this forum. The balance of defendant's motion, attacking the sufficiency of plaintiffs' state law claims, is denied without prejudice to its renewal at such time as the action is restored to the Court's active docket.

It is so ordered.