■ In the Matter of CHARLES McKIE, Petitioner, v JAMES P. CORCORAN, as Superintendent of the New York State Insurance Department, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent Superintendent of the New York State Insurance Department, dated April 21, 1989, which, after a hearing, revoked the petitioner's license to act as an insurance broker.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, with costs.

Some time before August 1987, the petitioner insurance broker received a check for $2,996.14 from his client Donovan Morgan, in payment of a premium for an annuity policy issued by the Hartford Life Insurance Company (hereinafter Hartford Life). On or about August 28, 1987, the petitioner sent Hartford Life a check for that amount, but the check was dishonored for insufficient funds. Although the petitioner was asked to make good the amount, he did not do so. Hartford Life finally withheld his commissions in order to cover the deficit, although it remains unclear whether the deficiency in Morgan's premium, which was paid by the company, was ever fully compensated by the petitioner's withheld commissions.

The New York State Insurance Department then commenced an investigation, but, despite repeated requests for the petitioner's bank records and for an explanation of the dishonored check, the petitioner supplied neither. Following a hearing on April 18, 1989, at which once again the petitioner produced neither his bank records nor an explanation of his conduct, the Hearing Officer found that the petitioner had demonstrated untrustworthiness and incompetency, and recommended that his license be revoked and that all pending applications for licensure be denied. The Hearing Officer's findings, conclusions and recommendations were adopted by the Superintendent of the New York State Insurance Department on April 21, 1989.

In this proceeding, the petitioner contends that the Superintendent's decision was arbitrary and capricious and not based upon substantial evidence, and that the penalty was excessive. We disagree.

The Superintendent of the New York State Insurance Department has broad discretion in licensing insurance brokers and agents (Insurance Law §§ 2103, 2104; *Matter of Nash v Stewart,* 31 AD2d 564). By statute, the Superintendent may revoke an insurance agent's license if the agent has "demonstrated his incompetency or untrustworthiness to act in such capacity" (Insurance Law § 2110 [a] [4]).

"Untrustworthy" and "incompetent" are terms of art, employed in this context in a broader sense than such terms are popularly used *(Matter of Bowley Assocs. v State of New York Ins. Dept.,* 98 AD2d 521, 527). Thus, an insurance broker's failure to account properly for insurance premiums collected and received has been found to constitute incompetence *(Matter of Leterman v Pink,* 249 App Div 164, *affd sub nom. Matter of Ebenstein v Pink,* 275 NY 613); and where an agent "failed to remit premiums and issued a check for collected premiums later dishonored and not made good", his real estate and insurance broker licenses were properly revoked on the grounds of "incompetency and/or untrustworthiness" *(Matter of Eich v Shaffer,* 136 AD2d 701, 702).

If the Superintendent's determination that the petitioner demonstrated incompetency and untrustworthiness is supported by substantial evidence, it must be confirmed *(Matter of Nash v Stewart, supra).* An administrative determination will be found to be supported by substantial evidence if there is a rational basis in the record for the findings of fact on which the agency's decision is based *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 182).

Here, there is no dispute that the petitioner received $2,996.14 from his client Morgan in order to cover an annuity premium. Although the petitioner purported to transfer this premium to Hartford Life, his check was dishonored. Despite many opportunities to explain what happened to Morgan's money and why his own check had been dishonored, the petitioner failed to do so. Under the circumstances, as the Hearing Officer found, the conclusion is "inescapable" that the petitioner has demonstrated incompetency and untrustworthiness to continue to act as an insurance broker.

In addition, "[w]here, as here, the administrative agency's determination is based upon substantial evidence, the penalty imposed is a matter of discretion to be exercised solely by the agency" (Kostika v Cuomo, 41 NY2d 673, 676). Although the agency's discretion is not completely unfettered, "it has long been settled * * * that a * * * penalty imposed by the administrative agency is not to be disturbed unless it is clearly disproportionate to the offense and completely inequitable in light of the surrounding circumstances," or is " 'shocking to one's sense of fairness' " (Kostika v Cuomo, supra, at 676; Matter of Pell v Board of Educ., 34 NY2d 222, 234). Given the facts and circumstances of this case, the petitioner's persistent refusal to explain his conduct, the Department's duty to prevent a recurrence of such financial harm to clients and insurers alike, and the deterrent example afforded by the revocation of the petitioner's license, the penalty is not excessive or disproportionate to the offense at bar, nor is it "shocking to one's sense of fairness" (Matter of Pell v Board of Educ., supra, at 234). Kunzeman, J. P., Harwood, Balletta and O'Brien, JJ., concur.