■ In the Matter of ALLSTATE INSURANCE COMPANY, Respondent, v LESLIE HERNANDEZ, Respondent. ALBERT C. JONES et al., Additional Respondents; COLONIAL PENN INSURANCE COMPANY, Additional Appellant. [723 NYS2d 65] —In a proceeding pursuant to CPLR 7503 to permanently stay arbitration of an uninsured motorist claim, Colonial Penn Insurance Company appeals from an order of the Supreme Court, Kings County (Kramer, J.H.O.), dated December 21, 1999, which, after a hearing, granted the petition.

Ordered that the order is reversed, on the law, with costs, the petition is denied, the proceeding is dismissed on the merits, and the parties are directed to proceed to arbitration.

The instant proceeding arises out of an accident involving a bicyclist, the respondent Leslie Hernandez, and a vehicle owned by the additional respondent Elsie C. Daniels, which occurred on July 23, 1996. At the time of the accident Hernandez was covered by a policy of automobile insurance issued by the petitioner, Allstate Insurance Company (hereinafter Allstate). Daniels was insured by the appellant Colonial Penn Insurance Company (hereinafter Colonial Penn) through the assigned risk program covering the period July 6, 1995, to July 5, 1996. On June 15, 1996, Colonial Penn issued a "notice of cancellation" to Daniels, advising her that her policy would be cancelled for nonpayment of the premium if the premium was not received by the date of cancellation, July 6, 1996. Daniels did not pay the premium and the policy was cancelled effective July 6, 1996. After the accident, Hernandez made a claim for uninsured motorist benefits from Allstate, and upon its refusal to provide those benefits, filed a demand for arbitration. Allstate commenced the instant proceeding to permanently stay arbitration of Hernandez's uninsured motorist claim on the ground that the Daniels vehicle was insured at the time of the accident by Colonial Penn. Colonial Penn opposed the petition, claiming that it had cancelled the policy for nonpayment of premium before the date of the accident. After a hearing, the Supreme Court granted the petition and permanently stayed arbitration, concluding that Colonial Penn's cancellation of the policy had been ineffective because it had failed to file a notice of termination of its coverage with the Commissioner of the New York State Department of Motor Vehicles (hereinafter the Commissioner).

The provisions of the New York Automobile Insurance Plan (hereinafter the Plan) govern the termination of an insurance policy under the circumstances presented in this case. The insurance carriers' responsibility to provide notice is contained in section 14 of the Plan. Section 14 (B) (1) and (2) set forth the notice an insurance carrier is required to send to its insured prior to renewal of a policy under the Plan. Section 14 (B), note 1 of the Plan states: "[I]f the renewal premium * * * is not received by the 20th day prior to the expiration date of the policy, the insurer shall issue a notice of termination in compliance with the Vehicle and Traffic Law."

Vehicle and Traffic Law former § 313 (2) (a) governed the notice of termination to be sent to the Commissioner at the time the Daniels policy was cancelled. That section provided:

"[U]pon the termination of an owner's policy of liability insurance * * * at the request of the insured or by cancellation by the insurer, the insurer shall file a notice of termination * * * with the commissioner not later than thirty days following the effective date of such cancellation or other termination * * *

"For the purposes of this subdivision, the non-renewal of a policy which has been in force for less than six months *shall be* considered a cancellation or termination. The non-renewal of a policy which has been in force for at least six months *shall not be* considered a cancellation or termination. An insurer shall not file a notice of termination with the commissioner except as required by this subdivision" (Vehicle and Traffic Law former § 313 [2] [a] [emphasis added]).

The policy in question had been in force for more than six months. Therefore, Colonial Penn was not required to notify the Commissioner of the nonrenewal (*see, Badagliacca v GEICO Gen. Ins. Co.,* 255 AD2d 536; *Fitzsimons v Automobile Ins. Co.,* 221 AD2d 500; *see also,* 15 NYCRR former 34.2 [r]).

Contrary to the opinion of our dissenting colleague, note 1 of section 14 (B) refers only to subdivisions (1) and (2) of section 14 (B) which directly address notices relating to renewal, and the insured's duty to make timely premium payments. The dissent relies on section 14 (B) (3) which reads: "[A] renewal policy will not be issued for the reason the applicant is not entitled to insurance under the Plan." Finally, section 14 (B) provides: "A copy of such notice, referred to above, shall be filed with the producer of record. *In the event the insurer will not issue a renewal policy, a statement of the reasons therefore, together with a copy of said notice, shall be filed with the Superintendent of Insurance of the State and the Plan*" (emphasis added).

We conclude that section 14 (B) (3) applies only where "the applicant is not entitled to insurance under the Plan." There are myriad reasons why an insured is not entitled to a renewal policy under the Plan, such as illegal conduct or the failure to provide accurate information on the application for insurance. This section is clearly designed to ensure that the Superintendent of the Plan is made aware of the particulars of the nonrenewal to ensure that only qualified applicants receive insurance under the Plan. Here, Daniels was otherwise entitled to insurance under the Plan, but she simply failed to pay her premium.

Contrary to the determination of the Supreme Court, Colonial Penn was under no duty to file a notice of termination of Daniel's policy with either the Commissioner or the Superintendent of the Plan. Accordingly, the order is reversed, and the petition to permanently stay arbitration is denied, and the proceeding is dismissed. O'Brien, J. P., Friedmann and Smith, JJ., concur.

Goldstein, J., dissents and votes to affirm the order appealed from, with the following memorandum: From July 1995 until July 1996, Elsie C. Daniels was covered by an Assigned Risk Policy issued under the New York Automobile Insurance Plan (hereinafter the assigned-risk plan). The rules of the assigned-risk plan constitute "a comprehesive regulatory scheme which supplants the rights and liabilities of parties to an ordinary insurance contract" (*Matter of Bowley Assocs. v State of N. Y. Ins. Dept.,* 98 AD2d 521, 526, *affd* 63 NY2d 982). Assigned-risk plan contracts are special relationships subject to immediate oversight and supervision by the Superintendent of Insurance (*see, Coling Ambulette Serv. v Empire Ins. Co.,* 262 AD2d 187).

Under the assigned-risk plan, an insured is assigned to a designated insurance carrier for three consecutive years (*see,* New York Automobile Insurance Plan § 13). The insured receives an initial one-year policy, renewable for two one-year periods. If the renewal premium is not received by the 20th day prior to the expiration of the first or second year, the rules of the assigned-risk plan state that "the insurer shall issue a notice of termination in compliance with the Vehicle and Traffic Law" (New York Automobile Insurance Plan § 14 [B], note 1). The rules further provide: "In the event the insurer will not issue a renewal policy, a statement of the specific reasons therefore, together with a copy of said notice, shall be filed with the Superintendent of Insurance of the state and the Plan" (New York Automobile Insurance Plan § 14 [B]).

When Daniels's assigned risk policy was due for its first re-

newal in July 1996, she failed to pay the premium, and coverage was terminated. However, the insurance carrier Colonial Penn Insurance Company (hereinafter Colonial Penn) failed to file a notice of termination with the Commissioner of Motor Vehicles, nor did it notify the Superintendent of Insurance or the assigned-risk plan.

Failure to file a notice of termination with the Commissioner of Motor Vehicles when one is required renders the attempted termination ineffective with respect to third parties (see, Matter of Liberty Mut. Ins. Co. v Vidale, 207 AD2d 489; Matter of Eveready Ins. Co. v Wilson, 180 AD2d 796).

Colonial Penn claims that filing of the notice of termination with the Commissioner of Motor Vehicles was not required, citing Vehicle and Traffic Law former § 313 (2) (a). Vehicle and Traffic Law former § 313 (2) (a) provided that "[t]he nonrenewal of a policy which has been in force for at least six months shall not be considered cancellation or termination." That provision was added by Laws of 1983, chapter 781, § 3, to address concerns that the computer system of the New York State Department of Motor Vehicles could not accurately keep track of "all policy additions and terminations" (1983 NY Legis Ann, at 334), and was repealed in 1998 because more accurate record-keeping was possible (1998 NY Legis Ann, at 321; L 1998, ch 509).

Colonial Penn further claims that there is no case law stating that it is required to notify the assigned-risk plan in the event that it decides not to issue a renewal policy. However, the rules of the assigned-risk plan clearly state that it is required to provide this notice.

The Supreme Court determined that Colonial Penn was required to both file the notice of termination with the Commissioner of Motor Vehicles, and notify the assigned-risk plan of the nonrenewal of the Daniels policy. The Supreme Court noted that an insured's assignment by the assigned-risk plan to a designated insurer is for three consecutive years, including "the initial issuance of the policy, plus two renewal periods" (New York Automobile Insurance Plan § 13). The court found that both the Commissioner of Motor Vehicles and the assigned-risk plan would want to know "whether this vehicle is being insured, or whether it had been terminated." Indeed, it is apparent that denial of renewal of an assigned-risk policy would generally mean, not that coverage was replaced, but rather, that coverage was terminated.

This Court has held that requirements for cancellation of an assigned-risk policy within the three-year period must be

strictly complied with (*see, Matter of Eveready Ins. Co. v Hadzovic*, 182 AD2d 818). In this case, Colonial Penn failed to comply with the rules of the assigned-risk plan. The rule that requires that termination notices be issued in compliance with the Vehicle and Traffic Law refers to the form and content of the notice, not who must be notified. To hold otherwise would render significant portions of the rules of the assigned-risk plan meaningless. It is well settled that provisions of a regulatory scheme or contract should be interpreted to give effect to all language employed, to render all parts consistent with each other (*see, Wallace v 600 Partners Co.*, 86 NY2d 543; *Ferrin v New York State Dept. of Correctional Servs.*, 71 NY2d 42). Colonial Penn's interpretation of the rules of the assigned risk plan would render entire provisions meaningless.

In the instant case, there was a complete failure to comply with the notification provisions of the assigned-risk plan. Accordingly, the termination of insurance was ineffective.